W. B. CARROLL v. NORTH CAROLINA STATE FIREMEN'S ASSOCIATION AND BOARD OF TRUSTEES OF THE FIREMEN'S PENSION FUND OF WILMINGTON, NORTH CAROLINA.

(Filed 25 May, 1949.)

**1. State § 3—**

Where a statute creates a corporate State agency with capacity to sue and be sued, but expressly limits actions which may be brought against it, the limitation on the right to sue the agency is effective.

**2. Firemen's Relief Fund § 2—**

A fireman may not sue the State Firemen's Association on a claim for benefits under the Act. G.S. 118-12.

**3. Firemen's Relief Fund § 3—**

A claim for hospital expenses incurred as a result of an injury received by a fireman in the course of his duties does not come within the benefits provided for members of the State Firemen's Association.

**4. Firemen's Relief Fund § 12—**

A fireman may not accept benefits afforded by Ch. 26, Private Laws of 1937, and then assert that he is entitled to recover benefits for a single item covered by the general law, Ch. 41, Laws of 1925, which the private law supersedes in his community.

**5. Firemen's Relief Act § 11—**

Where a claimant states no cause of action against the local Firemen's Pension Fund, it is not necessary to consider his challenge of the validity

of the act creating the local pension fund as successor to the Relief Fund theretofore existing under the general law, and the judgment that he recover nothing against the trustees of the pension fund will be affirmed, and the appeal dismissed.

APPEAL of plaintiff and defendant N. C. State Firemen's Association from *Burney, J.,* October Term, 1948, NEW HANOVER Superior Court.

*John D. Bellamy & Sons and Walton Peter Burkhimer for plaintiff, appellant-appellee.*
*Hartsell & Hartsell and James & James for defendant, appellant.*
*Wm. B. Campbell for defendant Board of Trustees of the Firemen's Pension Fund of Wilmington, appellee.*

SEAWELL, J.   The plaintiff, a resident of the City of Wilmington, sued to recover $499.88, alleged to be a loss sustained by him in the course of his employment as a member of the Wilmington Fire Department, in payment of a hospital bill occasioned by an injury alleged to have occurred in the performance of his duty as fireman on January 18, 1940.

The suit was first brought against the State Firemen's Association. Because of the answer filed by the State Association, and an allegation therein that the Trustees of the local Board were at least primarily liable, if any liability existed, the Board of Trustees of the Firemen's Pension Fund was made a party.

As the pleadings were finally adjusted by amendment and undisputed facts made the subject of stipulation, the three-way controversy finally emerged in the following form:

Plaintiff, a resident of the City of Wilmington, and a member of the Wilmington Fire Department in good standing, while upon duty at the fire station January 18, 1940, fell and received an injury to his head which required hospitalization.   The hospital bill incurred on this account was $499.88, which constitutes the basis of the suit.

For the period beginning January 8, 1940, to and including May 31, 1940, the City of Wilmington paid to Carroll his full monthly salary and compensation according to his then rating and salary in the sum of $133.33 per month.

On May 11, 1940, the plaintiff addressed a letter to the Chairman of the Board of Trustees of the Firemen's Pension Fund, requesting that he be put upon the retired list and be paid the pension benefits to which he was entitled.   In pursuance of this request the plaintiff was retired as of June 1, 1940, and has been on the retired list since that time, receiving from the Trustees of the Firemen's Pension Fund the sum of $76.76 monthly in accordance with the provisions of Chapter 26, Private Laws of 1937.

The N. C. State Firemen's Association was created by Chapter 251, Laws of 1889, with corporate name and powers, for statistical research and fraternal purposes, without appropriation.

By Chapter 468, Public Laws of 1891, the sum of $2,500 was appropriated annually, constituting a "Firemen's Relief Fund" which the Treasurer of the State was required to pay to the Treasurer of the N. C. State Firemen's Association to be used for the relief of firemen, members of the association, who might be injured or rendered sick by disease contracted in the active discharge of duty as firemen, and for the relief of widows, children or dependent mothers of firemen killed or dying from disease contracted in discharge of duty.

By Chapter 831, Laws of 1907, there was created a Firemen's Relief Fund to be expended in the several towns and cities of the State qualifying under the law. Under this Act fire insurance companies were required to pay a tax of fifty cents on each one hundred dollars of premiums collected upon policies insuring property within the municipalities affected, to be used as a relief fund under the act. This was required to be paid directly by the Insurance Commissioner to the Treasurer of each town or city, subject to the use of the Board of Trustees of the Firemen's Relief Fund in each town or city created by that act. The act authorized the creation of such a board and provided for member succession.

The object of the relief therein, substantially stated, was (1) to safeguard the men in active service from loss of time from daily work occasioned by sickness contracted or injury received in the performance of duties, conditions to be prescribed by the North Carolina State Firemen's Association; (2) to provide reasonable support for those dependent upon the services of firemen who might lose their lives in the fire service of the town by accident or disease contracted by reason of the service; (3) to safeguard any fireman qualified by length of service in becoming dependent upon charity. In this act it was further provided that a sum not exceeding five per cent of the gross proceeds received by each town or city should be turned over to the State Firemen's Association for general purposes.

These laws were brought forward, with amendments immaterial to this case, except as noted, in the Consolidated Statutes of 1919, as Chapter 98, Articles 1 and 2.

Chapter 98 was amended by Chapter 41, Laws of 1925, by adding at the end of Section 6058, of Chapter 98, of the Consolidated Statutes, the following: "No fireman shall be entitled to receive any benefits under this section until the Firemen's Relief Fund of his city or town shall have been exhausted." (The amendment applies to direct appropriation paid into the hands of the Treasurer of the State Firemen's Association.) The 1925 Act also amended C.S., Sec. 6069 (relating to the disbursement

by local trustees) by striking out subsection 1 and inserting in lieu thereof the following: "1. Safeguard any fireman in active service from financial loss occasioned by sickness contracted or injury received while in the performance of his duties as fireman." Substantially in that form the laws were collected and revised in unimportant details and enacted as they appear in G.S., Chapter 118, "The Firemen's Relief Fund." Article 1 relates to the fund derived from fire insurance companies, and Article 2, to the State appropriation.

Throughout these laws the statute relating to the organization of a local Board of Trustees of Firemen's Relief Fund remained the same, and the requirements as to the disbursement of the fund were practically unaltered in scope and objective until the amendment of 1925, just noted, changing the phraseology of the Consolidated Statutes into the phrase, "To safeguard any fireman in active service from financial loss . . ."

Chapter 26, Private Laws of 1937, applicable only to the City of Wilmington, creates an entirely new Board under the name, "Trustees for the Firemen's Pension Fund of Wilmington, North Carolina," for the purpose of establishing and administering a permanent fund for the purposes set out in the act. It provides for the appointment of trustees for the fund, the payment to them by the treasurer, who is appointed collecting officer, of two per cent of the salaries of those employed as firemen; payment into the fund of fines by way of discipline; the investment and holding of property, with other powers. Summary of disbursements authorized are: (1) To safeguard members of the fire department from becoming dependent; (2) to provide reasonable support for widows and minors actually dependent, among those who may lose life in the fire service by accident or injury or disease contracted by reason of the service; (3) to pension permanently disabled or superannuated members of the fire department as defined in the act.

In section 2 of that act it is provided:

"That funds now held by the Board of Trustees of the Firemen's Pension and Relief Fund of the City of Wilmington, or at the time of the ratification of this Act being administered by it, shall be paid over by the said Trustees to the Treasurer of the Board of Trustees of the Firemen's Pension Fund of Wilmington, North Carolina, created by this Act, and by the latter Board held, administered, managed and disbursed under the provisions of this Act for the purposes and benefits herein defined."

Under the authority of the quoted section of the 1937 Act an aggregate amount of $32,531.94, effective as of June 3, 1937, was turned over to the present defendant "Board of Trustees for the Firemen's Pension Fund" by the then existing "Board of Trustees for the Firemen's Pension

and Relief Fund" of the City of Wilmington. Thereafter the Treasurer of the "Firemen's Relief Fund" of the City of Wilmington continued to receive checks from the Treasurer of North Carolina which were endorsed and turned over to the Treasurer of the Pension Fund as follows:

"In 1937, $1148.62; in 1938, $1272.67; in 1939, $1091.45; in 1940, $1114.92; in 1941, $1074.46; in 1942, $1314.33."

It is stipulated that Article 3, of Section 1, of the Bylaws of the State Firemen's Association reads as follows:

"Any member of this Association injured or made sick by disease contracted in the actual discharge of his duties as a fireman shall be entitled to the benefits from the 'Firemen's Relief Fund' of this Association, as follows: At the rate of $4.00 per day while totally unable to attend to his ordinary business by reason of such injury or sickness for a period not exceeding one hundred days; . . ."

The defendant local Board exhibits several pages of accounts tending to show that the income and output of the funds in its hands are practically equal so that there currently remains no fund in its hands applicable to plaintiff's demand, even if it were under the law liable therefor.

The defendant State Association sets up the defense that the plaintiff under pertinent statutes is forbidden to sue the State Association directly upon this or any other cause relating to the subject; and that at any rate the law itself requires local funds to be exhausted before any resort may be had to other funds under its control; and in this connection contends that Chapter 26, Private Laws of 1937, is invalid in that it is an attempt to repeal a general State law and change the character of funds expressly put in trust and to be disbursed for specific purposes inconsistent with that directed by the private Act; and that this repeal has not been accomplished because there is no expression of that purpose in the caption of the act as required by G.S. 12-1, the law then in force; or other indication of its intent to repeal; and that, therefore, this fund is constructively in the hands of the present pension board and should be, in law, available for payment of plaintiff's claim, if just and legal.

The plaintiff, while making no direct allegation aaginst the local Pension Board in the nature of the statement of cause of action against it, does claim that if the above mentioned Chapter 26, Private Laws of 1937, is invalid, in that event his claim ought to be settled out of funds left in the hands of the Pension Board received from State sources.

By agreement of the parties, Judge Burney heard the matter without the intervention of a jury, and under the stipulation of facts and admissions in the pleadings, and upon the laws affecting the matter in controversy, rendered judgment that the plaintiff recover nothing of the defend-

ant Pension Board and that it recover of the defendant State Firemen's Association the sum of $400 with cost of action. From this judgment the plaintiff and the defendant State Firemen's Association appealed.

While the plaintiff appealed generally, it appears from the record that the appeal from that part of the judgment rendered in its favor against the State Firemen's Association was based on the fact that the recovery was restricted to $400 instead of the larger amount demanded; and its appeal from the judgment of non-recovery against the defendant Pension Board was out of precaution and in the hope that it might be awarded the judgment against certain funds in the hands of the Pension Board in case ultimately the statute under which this defendant has received these funds from State sources should be pronounced invalid under the attack of the defendant State Firemen's Association. The anomalous character of this appeal will be noted later.

The death of plaintiff, pending appeal, having been suggested, his executors have come in, made themselves parties, and adopted their testator's pleadings.

Under the law as it now stands and as it stood when the defendant Pension Board was created and took over, there were three sources from which the State Firemen's Association received moneys: (a) Its proportionate part of the State's annual appropriation of $2,500, (b) the five per cent of the insurance tax, going into its general purpose fund, and (c) the amount contingently payable to it upon failure of the local Board of Trustees to perform certain duties, and after the matter had remained unadjusted for a given period. There is no intimation that this contingency has been productive. We are, therefore, left to consider whether the State Firemen's Association may be liable under the statute with respect to the State appropriation.

Although the State Firemen's Association has been created a corporation with capacity to sue and be sued, a suit for recovery upon a claim against funds in its hands is expressly inhibited. G.S. 118-12. It is apparently the purpose of the Act to create a State agency and in doing so the doorway to court action is opened no wider than the statute permits. Moreover, the statute defines its purposes,—the character of relief afforded,—which is quite different from the obligation imposed upon the local Relief Board under G.S. 118-7—"to safeguard from financial loss" (see C.S. 6069 as amended by Chapter 41, Laws of 1925). Whatever that may mean as applied to funds in the hands of the local Board, the disbursements of funds in the hands of the State Association cannot be liberalized, or the strict requirements of the law rationalized, to include a financial loss of the character claimed; nor will the bylaws of the Association bear that construction. The pertinent provisions of the bylaws above quoted are too evidently based on loss of earnings since

compensation is based on a per diem, running during a defined period of disability, with provision for extension in exceptional cases, at the discretion of the Association. His Honor was in error in analogizing or confusing this kind of benefit with the plaintiff's unrelated claim for reimbursement for a hospital bill, applicable, if at all, only to the funds to be disbursed by the local Relief Board as organized under the general law.

On the appeal of the defendant Association the judgment must be reversed. It is so ordered.

We have not found it necessary to deal with or mature the contingency from which plaintiff expresses the hope to be a standby beneficiary—a finding that the Private Act through which the present Pension Board has succeeded to the funds provided by the General Statute is invalid as an abortive attempt to repeal the general public laws, with the result that the defendant local Board is to be held constructively in possession of funds impressed with a trust, subject to plaintiff's demand.

The plaintiff has in effect pitched his claim against the local Pension Board in the alternative; that he should recover against it only provided the statute under which it holds the disputed funds should be declared invalid, and the funds impressed with a trust which he supposes would subject them to his demands. As stated, there are no allegations or positive averments in his pleadings upon which the trial court could have predicated any judgment against the defendant Pension Board; and the Court has not found it necessary to consider the suggested invalidity of the statute at all.

It does not appear from the record that the Trustees of the Firemen's Relief Fund have been made parties to this action, although by order of Judge Olive the fund itself seems to have been made a party—but has not yet spoken.

However, if the Act of 1937 should be declared invalid with respect to the transfer of funds from the Trustees of the Firemen's Relief Fund, there would still be hurdles for the plaintiff to overcome. One is whether he has not elected to take the benefits under the 1937 law rather than pursue another fund under the general law having only in the particular respect a broader coverage, but upon the whole presenting much less social and financial security. It seems rather obvious that he would not be entitled to take all the benefits of the Pension Fund plus the benefits of a single item picked from a different law.

At present we can only say that plaintiff's pleading does not put him in position to recover anything from the defendant Trustees of the Firemen's Pension Fund.

On plaintiff's appeal, therefore, the judgment that he recover nothing from the defendant Trustees of the Firemen's Pension Fund is affirmed

and the appeal dismissed; and on his appeal respecting the judgment against the State Firemen's Association, the appeal is dismissed.

On appeal of defendant State Firemen's Association, the judgment is reversed.